### PINK REED v. THE STATE.

*No. 759.    Decided June 12.*

1. **Bill of Exceptions—Practice on Appeal.**—A bill of exceptions, though approved and filed in the trial court, will not be considered on appeal if the approval and filing was after the court had adjourned for the term.

2. **Burglary—Charge—Ownership of House.**—On a trial for burglary, where the indictment alleged the house to be in the occupancy of one I., and the property stolen belonged to said I., and was taken from her possession and from a room in which she staid; and the evidence was, that I. had rented the entire house, which contained two rooms separated by a partition, one of which she had rented to another party; *Held,* that a charge was not obnoxious to objection which instructed the jury, that if the burglarized building was composed of two rooms separated by a partition wall, and if the alleged owner lived in one room and had exclusive care, control, and management of said room, it would be her house so far as the prosecution for burglary was concerned.

APPEAL from the District Court of Hopkins. Tried below before Hon. E. W. TERHUNE.

This appeal is from a conviction for burglary, the punishment being assessed at two years' imprisonment in the penitentiary.

All the parties to this transaction were negroes.

Amanda Isom testified, that she lived in a two-room frame house, which she rented, occupied, and had in possession. The rooms were separated by a partition with a door in it. Each room had a door and two windows leading to the outside. Lula Smith staid in one room, and she in the other. On January 1st Lula was not there, and when she, Amanda, left she closed and fastened the doors and windows on the inside, except one, which she locked from the outside. She bolted the partition door from the inside in her room. When she returned, about sundown, the door leading into Lula Smith's room was broken open, the fastenings being broken off. One window to that room was also broken open, and the fastenings broken. Her trunk was broken open, and she found some of her clothing and household articles had

been stolen. Next morning she was told by Anna Hughes that defendant had carried some property to and left it at her house, and she went there, identified it, and got it.

Anna Hughes corroborated her as to this matter, and stated, that defendant staid at her house that night and gave her the things, but told her not to wear them around town.

Defendant, for himself, testified: "Some time before Christmas I went to Amanda Isom's house one day after dinner, and no one was there but Lula Smith. I showed her a half dollar in silver I had, and she snatched it out of my hand and refused to give it back to me. I asked her for it, but she said she would not let me have it. She told me to leave; that her man would be there soon and see me. I could not get the money, and left. On January 1, 1895, about half an hour before sundown, I again went there to get my money, and no one was. there but Lula Smith. I asked her for my money, and she refused to let me have it. I told her I was going to have it, and she refused. I then told her I was going to take her things, and force her to give me my money. I then went to work and gathered up such things as I found. The door of the partition was open, and I took the things from both rooms. I put them in a pillow-case and left. She did not say anything. I then went down the streets to Mary Nash's house, and on my way left the bundle at a white lady's house, with her consent. On my return I warmed my feet at her fire, and got the things and went to Anna Hughes, where I staid all night. Next day I went home, and was sick in bed until I was arrested in the afternoon. I have a wife, but no children, and have no use for baby's clothing. I thought the things belonged to Lula Smith, and took them to make her pay me my money. The door was open when I went to Amanda. Isom's house, and Lula Smith was in the yard and invited me in. I did not intend to keep the things, but intended carrying them back next day, and would have done so had I not been sick. I told Anna Hughes to keep them until I called for them I intended going back to see Lula Smith next morning, to get my money."

*King, Connor & King,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—This is a conviction for burglary, and two years' imprisonment in the penitentiary was the result of the trial in this cause in the court below.

The only bill of exceptions incorporated in the record can not be considered, because approved and filed after term time. Complaint is made of the charge, because the jury are told, that if the burglarized building was composed of two rooms, separated by a partition wall, and if the alleged owner lived in one room and had exclusive control, care, and management of said room, it would be her house so

far as the prosecution for burglary is concerned. This room was the burglarized house. There was no error in this charge. The house had two rooms. Amanda Isom had rented the entire house. Lula Smith slept in one room, and Amanda Isom in the other. Appellant was charged with burglarizing the house of Amanda Isom. The evidence shows her room was burglarized, her trunk broken open, etc. Every door was fastened and window closed when she left the house. On her return a window was up, and the door leading from Lula Smith's room into Amanda's room had been broken open. Under this state of case, Amanda Isom was the owner of the room burglarized, and the fact that she rented to Lula Smith the other room did not make them joint tenants of Amanda's room. These two were the only occupants of the house at the time of the burglary, and they "lived" in separate rooms. The entire house had been rented by Amanda Isom, and Lula Smith was her tenant of one of the rooms. Ownership of the room in question was properly alleged in Amanda Isom.

It is contended, also, that the court failed to charge the jury in regard to appellant's account of his possession of the property taken from the room in question. In this connection the court instructed the jury, that "if defendant went into the house alleged to have been burglarized with the consent of Lula Smith, or if he went in the house through an open window, not opened by himself, or if he did not have any intent to steal Amanda Isom's property when he went into the house, or if you have a reasonable doubt as to whether or not either of such states of case exists, or if you have a reasonable doubt as to the defendant's guilt; * * * defendant should be acquitted." This charge correctly and directly applies the law to the facts as detailed on the trial, and covers every issue so made, as we understand the testimony.

The evidence amply supports the conviction, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.